[No. A044424. First Dist., Div. Three. June 14, 1990.]

CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, Cross-complainant and Appellant, v. BRUCE B. BALES, Cross-defendant and Respondent.

228

## COUNSEL

Weinberg, Campbell & Stone, Michael T. Stone and Joann M. Cook for Cross-complainant and Appellant.

Murphy, Pearson, Bradley & Feeney, Michael P. Bradley and Ryan T. Russell for Cross-defendant and Respondent.

## OPINION

**BARRY-DEAL, Acting P. J.—**  In this appeal we decide whether an insurer, sued by a third party claimant for violation of Insurance Code

section 790.03, may obtain comparative equitable indemnity from the claimant's former attorney on the theory that the attorney's negligence at least partially caused the claimant's damage. We hold that public policy in favor of preserving the undivided loyalty of lawyer to client dictates that the insurer may not obtain indemnity in this situation. We affirm.

### Facts and Procedural History

This is an appeal from judgment after the demurrer of respondent Bruce Bales (Bales) to the cross-complaint of appellant California State Automobile Association Inter-Insurance Bureau (CSAA) was sustained without leave to amend. Our review of the facts is limited. ■ " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the [cross-] complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Accordingly, we summarize the facts as they appear in the cross-complaint, and assume for the purpose of this appeal that they are true, even though it may be difficult or impossible to prove them at trial.

In March 1983, Dorothy Cooper (Cooper) was injured in a car accident. The other car was driven by CSAA's insured. Cooper engaged Attorney Bales to represent her in her action against the insured. However, Bales did not energetically pursue Cooper's claim. He refused to negotiate a settlement with CSAA and did not inform CSAA that Cooper was especially susceptible to emotional distress. In addition, Bales did not seek preferential trial setting for Cooper, even though she was 70 years old and was entitled to an early trial date. (Code Civ. Proc., § 36, subd. (a).) Cooper's action against CSAA's insured was finally settled in May 1987. In December 1987, represented by new attorneys, Cooper filed the present bad faith and unfair practice suit against CSAA.[1] The suit alleged that CSAA had breached its

---

[1] Cooper's action is not barred by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58] (eliminating third party statutory and bad faith actions against insurers filed after effective date of decision). We stayed this appeal pending our Supreme Court's decision in the related case, *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1990) 50 Cal.3d 658 [268 Cal.Rptr. 284, 788 P.2d 1156], which presented the question whether Cooper's action against appellant was barred by *Moradi-Shalal's* requirement that all surviving third party actions be grounded on a judicial determination of the insured's liability. (*Moradi-Shalal, supra*, at pp. 305-313.) The Supreme Court held that a stipulated judgment to which the insurer was a party was a sufficient judicial determination, and allowed Cooper's suit to proceed. (*California State Auto. Assn., supra*,

statutory and common law duties to Cooper by failing to settle the action promptly even though the liability of its insured was clear. (See Ins. Code, § 790.03, subd. (h).) CSAA cross-complained against Bales for implied equitable indemnity, alleging that Bales was partially if not completely responsible for the delays that led to the damages alleged by Cooper, and that Bales should pay his comparative share of those damages. Bales demurred, the demurrer was sustained without leave to amend, and this appeal followed. We affirm.

## Discussion

■ Ordinarily, where an indivisible injury is caused by two or more tortfeasors, the tortfeasors may claim against each other for implied equitable indemnity. (See *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899]; and see 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 89 et seq., pp. 162-173.) ■ This is the basis of CSAA's claim. CSAA argues that because Bales contributed in some part to the delay in settlement that is the basis of Cooper's action against CSAA, CSAA is entitled to comparative indemnity from Bales.

CSAA's claim might have merit in another context. However, the ordinary rules of implied equitable indemnity in tort do not apply when the claim for indemnity is made against an attorney, is based on a breach of the attorney's duty to his or her client, and is brought by an adverse party in litigation which is the same as or related to that in which the alleged negligence took place. (See, e.g., *Holland* v. *Thacher* (1988) 199 Cal.App.3d 924, 929-935 [245 Cal.Rptr. 247] [discussing public policy considerations]; *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818, 821-822 [156 Cal.Rptr. 679]; *Held* v. *Arant* (1977) 67 Cal.App.3d 748, 752 [134 Cal.Rptr. 422]; and see 5 Witkin, Summary of Cal. Law, Torts, *supra*, § 93, at pp. 166-167.) Perceiving that attorneys would be reluctant to accept cases that might result in indemnity claims, and, more significantly, that if faced with a potential indemnity claim, the attorney's sense of self-preservation might impinge on his or her duty of undivided loyalty to the client, these cases have established an exception to the ordinary rule of equitable indemnity. (See *Holland, supra*, at pp. 930, 933-934.) CSAA acknowledges the existence of the exception, but argues that virtually all of these cases have involved distinguishable factual circumstances. However, we find that the same considerations which applied in those cases dictate the application of the exception here.

at p. 665.) When the Supreme Court's decision became final, the stay of this appeal automatically expired. We now proceed on the merits.

Where the attorney represents either a first or third party claimant on an insurance policy, the interest of the client is necessarily adverse to that of the insurer, even though there may not be any underlying action against the insurer. In such situations, there is a possibility that conduct of the insurer may subject it to liability for bad faith.[2] That possibility in turn creates a potential conflict between the attorney's duty to pursue the client's claim vigorously, and the understandable desire to avoid conduct which might later be the basis for the attorney's personal liability in indemnity to the insurer. An attorney who believed that the insurer had engaged or was about to engage in bad faith claims practices might well choose to avoid such liability by acting to shield the insurer, even though his or her client would be ill-served by such action. For example, in the case at bench, CSAA seeks to hold Bales liable for his failure to warn CSAA that his client was particularly susceptible to emotional distress. However, had Bales relayed that information to CSAA, he might well be found to have breached his duties as zealous advocate and as protector of his client's confidences. In effect, were we to adopt CSAA's position, an attorney would be required to act as advocate not only for his or her client, but also for an adverse party. (Cf. *Mason* v. *Levy & Van Bourg* (1978) 77 Cal.App.3d 60, 67 [143 Cal.Rptr. 389] [forcing attorney to take interest of others into account inconsistent with duty to exercise independent professional judgment on behalf of client].) This is the evil which the general rule against such actions is designed to prevent. (See, e.g., *Held* v. *Arant, supra*, 67 Cal.App.3d at p. 752 ["Where, however, an attorney is retained to represent the interests of his [or her] client against persons who are actual or potential adversaries, the possibility that one of those adversaries may seek indemnity from the attorney if he [or she] is held liable to the client can impinge upon the undivided loyalty owed by counsel."].) We therefore agree with the trial court that CSAA may not maintain this action for indemnity against Bales.

Our conclusion does not deprive CSAA of a defense based on Bales's conduct. CSAA may assert Bales's negligence as an affirmative defense to liability and has in fact done so in the main action. (See, e.g., *Holland* v. *Thacher, supra*, 199 Cal.App.3d at pp. 929-930 [rules of agency allow application of comparative fault rules to plaintiff].) CSAA nonetheless asserts that if Cooper establishes that Bales acted outside the scope of his authority as an attorney, it may be deprived of that defense because "there is a question" whether Bales's acts will be imputed to Cooper. We do not reach

---

[2] We recognize that because *Moradi-Shalal* imposes a prospective bar against third party bad faith actions (see fn. 1, *ante*), this situation will apply more and more infrequently, if at all. However, our analysis would apply to first party actions as well, which are unaffected by *Moradi-Shalal*. (See, e.g., *Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 838 [262 Cal.Rptr. 106] [noting survival of first party, common law, bad faith action].)

the issue. CSAA cites no authority which would compel that result and does not establish from the record that Cooper has attempted to avoid such an imputation. We do not sit to give advisory opinions on matters which may or may not prove controversial, especially when the party most interested in the issue has not spoken. (See, e.g., *Young* v. *Three for One Oil Royalties* (1934) 1 Cal.2d 639, 647-648 [36 P.2d 1065] ["[A]ny decision that we might render . . . would be *dictum* pure and simple. It hardly seems fair that we should pass on this important question and possibly prejudice the rights of litigants in other pending actions except when the conditions are equal and the decision binding upon all parties to the litigation. We therefore express no opinion upon this question and leave the same to be determined in some future proceeding in which all parties therein will be upon equal footing."].) Because Cooper is not a party to this appeal and the issue is not properly before us, we leave any consideration of the point to other proceedings which involve an actual rather than hypothetical controversy, and in which all interested parties will have an opportunity to be heard.

We also reject CSAA's various attempts to evade the public policy exception which we apply in this case. CSAA first asserts that prior cases have involved claims between successive attorneys, and that absent such a relationship, there is no threat to the undivided loyalty of the attorney. For the reasons stated above, we disagree. (See *Rowell* v. *TransPacific Life Ins. Co.,* *supra,* 94 Cal.App.3d at pp. 821-822 [finding potential for conflict where alleged attorney negligence was concurrent with alleged misconduct of insurer].) The question is whether the threat of a cross-action will affect the attorney's loyalty to his or her client, not whether the parties are in the precise positions considered in previous cases.

Second, CSAA asserts that because no bad faith claim could be brought before resolution of the underlying claim against CSAA's insured, there was no conflict between Bales's duty to Cooper and any desire to protect himself against a later bad faith claim. Again, as we have stated, the fact that there is no pending lawsuit between insurer and claimant does not mean that their interests are not adverse. Even a cursory review of the insurance law of this state confirms the opposite conclusion. (See, e.g., *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 400 [257 Cal.Rptr. 292, 770 P.2d 704] [describing process of making claim against insurer].)

Finally, CSAA contends that, unlike the successor-counsel cases, Bales here had no major tactical choice to make, but had a clear duty to mitigate his client's damages by encouraging a speedy resolution of his client's claim against the insured. CSAA then reasons that because Bales's duty to his client allowed no discretion, there could be no conflict between his duty to

his client and the potential indemnity claim. This argument was accepted in *Parker* v. *Morton* (1981) 117 Cal.App.3d 751, 767 [173 Cal.Rptr. 197], which CSAA urges us to follow. We reject CSAA's argument and decline to follow *Parker.* It does not matter that in a particular case, at a particular time, only one proper course of action may be open to an attorney; the attorney must not be prevented by a potential cross-action and threat of personal liability from giving the client his or her undivided loyalty. Where the attorney has a duty to a potentially adverse party, that loyalty cannot be undivided. (See *Holland* v. *Thacher, supra*, 199 Cal.App.3d at pp. 934-935 [criticizing *Parker*].) As the *Holland* court noted, even the possibility that the attorney might be subject to cross-complaint gives rise to the danger that the attorney will allow his or her advice to be affected by potential personal liability rather than the good of the client. (*Ibid.*)

We conclude that the public policy exception to the general rule of implied equitable indemnity actions applies, and that the trial court correctly sustained the demurrer to the cross-complaint on that ground. The judgment is affirmed.

Merrill, J., and Strankman, J., concurred.